WO                                                                                                          KAB

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Robert Escalera,<br><br>          Plaintiff,<br><br>v.<br><br>Corizon Health Incorporated, et al.,<br><br>          Defendants. | No. CV 19-04934-PHX-MTL (JFM)<br><br><br>**ORDER** |

Plaintiff Justin Robert Escalera, who is currently confined in Arizona State Prison Complex-Eyman, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendant Centurion moves for summary judgment, and Plaintiff opposes.[1] (Docs. 26, 82.)[2] Also pending before the Court is Plaintiff's Motion for injunctive relief in the form of an order directing Centurion to provide him a cleaning device for his BiPap machine and directing Corizon to pay for the cleaning device. (Doc. 70.)

**I.    Background**

In his Complaint, Plaintiff relevantly alleged as follows. In 2015, Plaintiff was evaluated at the Oasis Sleep Study Center (Oasis) and diagnosed with severe sleep apnea

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response. (Doc. 29.)

[2] Plaintiff cross-moves for summary judgment against Centurion, but that Motion is not fully briefed. (Doc. 112.)

and "placed on a BiPap mask"; it was found that an alternative treatment, a CPap mask would not provide effective treatment. (Doc. 1 at 5, 12.)

In August 2018, Plaintiff was taken into the custody of the Arizona Department of Corrections (ADC) and requested a CPap machine after being told by Corizon employees that BiPap masks were unavailable to prisoners. (*Id.* at 5-6; Doc. 2 at 4.) In September 2018, the provider that saw Plaintiff in August recommended that Plaintiff be given a BiPap mask for his severe sleep apnea. (Doc. 1 at 6.) At that point, Plaintiff was suffering from severe sleep deprivation, high blood pressure, memory loss, paranoia, suicidal thoughts, hallucinations, depression, and the "daily fear of sudden death thoughts." (*Id.* at 6-7.) Twice in November, Plaintiff requested the status of the BiPap mask, but did not receive a response until February 2019 when the provider told him that she was issuing a second request to the Corizon Utilization Medical Board for approval of a BiPap mask. (*Id.* at 7-8.) Between February and May 2019, Plaintiff went to medical numerous times due to anxiety attacks he was suffering from lack of sleep. (*Id.* at 8.) After Plaintiff tried to follow-up several times on the status of the BiPap mask, he was told in June 2019 that a third request for a BiPap mask was being submitted to the Corizon Utilization Review Board. (*Id.* at 10.)

On June 20, 2019, Plaintiff was issued a CPap mask, but after trying to use it, found that he felt like he was suffocating. (*Id.* at 10-11.) After advising Corizon staff that he had been given the wrong mask, Corizon staff told him he would not be given the BiPap mask due to cost. (*Id.* at 12.) On June 24, 2019, Centurion began providing medical care for the ADC, but Plaintiff complained to the "same medical staff," who knew of his sleep apnea issues because Centurion employed the same staff as Corizon. (*Id.* at 13.)

After Centurion took over, Plaintiff continued to request approval for the BiPap mask, but Centurion's staff did not file a new request for a BiPap mask and Plaintiff was told to file a grievance even though his condition continued to deteriorate. (*Id.* at 15-16.) In late July, Plaintiff was told to stop coming to medical, that Centurion staff were aware of his issues, and that if he did not stop filing Health Needs Requests, he would receive a

disciplinary ticket. (*Id.* at 16-17.) On July 16, 2019, Plaintiff's request for a BiPap mask was forwarded to the Centurion Regional Utilization Review Board for approval, and at the time Plaintiff filed his Complaint in August 2019, he had still not received his BiPap mask. (*Id.* at 18-20.)

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment medical claims against Defendants Corizon and Centurion. (Doc. 8.) Centurion now moves for summary judgment in its favor. (Doc. 26.)

## II.     Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III.   Facts[3]

Centurion took over the provision of healthcare to ADC prisoners on July 1, 2019. (Doc. 27 ¶ 1; Doc. 83 ¶ 1.) Plaintiff was provided his CPap machine before July 1, 2019 while Corizon was providing healthcare to ADC prisoners. (*Id.* ¶ 2.) On July 11, 2019, Plaintiff submitted a grievance regarding the BiPap machine and on July 16, 2019, the Centurion Facility Health Administrator responded that Corizon approved a CPap machine for Plaintiff and not a BiPap machine, and he had not submitted a new request to see a provider after Centurion took over to discuss his treatment. (*Id.* ¶¶ 3-4.) On August 5, 2019, a provider examined Plaintiff and discussed the matter further with him; she then submitted a request for a BiPap machine to replace the CPap. (*Id.* ¶ 5.) There is no indication in the medical records from that visit or on the request that the request for a BiPap machine was urgent. (*Id.* ¶ 6.)

On October 3, 2019, Plaintiff submitted an informal complaint that he had not yet received the BiPap machine, and a nurse responded that the records showed the provider did re-evaluate and ordered a BiPap, but there was no confirmation it had been received, so she submitted a re-order with specifications. (*Id.* ¶ 8.) There was a change in the processing of orders of those type of machines, which appears to have caused the delay obtaining the BiPap. (*Id.* ¶ 9.) The BiPap machine was given to Plaintiff on December 4, 2019. (*Id.* ¶ 10.) Plaintiff asserts that he was not given a cleaning machine to properly

---

[3] In his Controverting Statement of Facts (Doc. 83), Plaintiff included various additional facts that are unsupported by evidence. Unless otherwise noted, the additional facts Plaintiff asserts do not create a dispute of *material* fact. Because the asserted facts are unsupported by evidence and are not material to deciding the Motion for Summary Judgment, the Court does not recount them here.

clean his BiPap mask, which has caused Plaintiff further health issues. (Doc. 83 ¶ 10.) . .

**IV.    Discussion**

Centurion argues that it is entitled to summary judgment because Plaintiff has not shown that the course of treatment provided by Centurion's employees was medically unacceptable or that the course of treatment was in conscious disregard of Plaintiff's health. Centurion asserts that after it took over care for ADC prisoners, Plaintiff did not submit a new request to see a provider, but when Plaintiff was seen by a provider on August 5, 2019, the provider submitted a request for the BiPap machine to replace the CPap, but there was no indication that the request was urgent and Plaintiff was provided the BiPap machine in late 2019 after a delay due to changes in the ordering process. Centurion asserts that the delay in giving Plaintiff a BiPap machine after having to reorder the machine due to a change in ordering procedure does not amount to deliberate indifference.

Centurion further argues that because Plaintiff has already received the BiPap machine, his request for injunctive relief is moot. Centurion additionally argues that Plaintiff not being provided a cleaning machine is outside the allegations of his Complaint, but even it were relevant, there is no medical evidence supporting Plaintiff's assertion that he is harmed by not being provided a cleaning device for his BiPap machine. (Doc. 105 at 2.)

**A.    Legal Standard**

Under the Eighth Amendment, a prisoner must demonstrate that a defendant acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal

citation omitted). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety"; to satisfy the knowledge component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corrs.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Finally, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

To prevail on a claim against Centurion, as a private entity serving a traditional public function, Plaintiff must meet the test articulated in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-94 (1978). *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law).

To make this showing, Plaintiff must demonstrate that (1) he was deprived of a constitutional right; (2) Centurion had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Further, if the policy or custom in question is an unwritten one, the plaintiff must show that it is so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (internal quotation and citation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

**B.     Analysis**

Here, there is no evidence that Plaintiff's constitutional right to medical care under the Eighth Amendment was violated as a result of a policy, practice, or custom of Defendant Centurion. Rather, the evidence shows that after Centurion took over the healthcare for the ADC, Plaintiff was provided a BiPap after he made the request from Centurion's medical providers. Although Plaintiff argues that the same providers worked

for Centurion and implies that the providers should have known that he wanted to make a new request for a BiPap from Centurion, the Centurion employees' failure to proactively act on Plaintiff's behalf does not demonstrate that they were acting in deliberate disregard to Plaintiff's serious medical needs or that they were acting pursuant to a policy, practice, or custom of Centurion.  Rather, the evidence shows that when Plaintiff renewed his request for a BiPap with Centurion, the request was submitted to and later approved by Centurion.  Although there was a delay in processing the request for a BiPap machine, this delay shows, at most, negligence, which does not rise to the level of deliberate indifference to serious medical needs and cannot be attributed to a policy, practice, or custom of Centurion.

With regard to Plaintiff's new claim that he was not provided a cleaning machine for his BiPap, this claim was not alleged in the Complaint and, as a result, the Court does not have jurisdiction in this action over that claim.  Plaintiff's claim regarding the denial of a BiPap cleaning machine is based on entirely different facts than his claim regarding his attempts to obtain a BiPap machine, occurred during a different period of time, and given that the claim was not alleged in the Complaint, the legal theory underlying the claim is not clear to the Court.  There are no allegations or evidence in this record that Plaintiff has been denied a cleaning machine based on a policy, practice, or custom of Defendant Centurion.

For the foregoing reasons, summary judgment will be granted in favor of Defendant Centurion.

**IT IS ORDERED:**

(1)   The reference to the Magistrate Judge is withdrawn as to Defendant Centurion's Motion for Summary Judgment (Doc. 26), Plaintiff's "Motion for Emergency Preliminary Injunction Against Defendants Corizon Health Incorporated and Defendants Centurion of Arizona, LLC" (Doc. 70), and Plaintiff's Motion for Summary Judgment against Centurion of Arizona, LLC (Doc. 112).

(2) Defendant Centurion's Motion for Summary Judgment (Doc. 26) is **granted**. Defendant Centurion is dismissed from this action with prejudice.

(3) Plaintiff's "Motion for Emergency Preliminary Injunction Against Defendants Corizon Health Incorporated and Defendants Centurion of Arizona, LLC" (Doc. 70) is **denied** for lack of jurisdiction.

(4) Plaintiff's Motion for Summary Judgment against Centurion of Arizona, LLC (Doc. 112) is **denied as moot**.

(5) The remaining claim in this action is Plaintiff's Eighth Amendment medical care claim against Defendant Corizon.

Dated this 15th day of July, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge