WO                                                                                                                                    KAB

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONAl

| | |
|---|---|
| Justin Robert Escalera, | No.  CV 19-04934-PHX-MTL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Corizon Health Incorporated, et al., | |
| Defendants. | |

Plaintiff Justin Robert Escalera, who is currently confined in the Arizona State Prison Complex-Eyman, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Pending before the Court are: (1) Plaintiff's Motion for Summary Judgment (Doc. 108), (2) Defendant Corizon Health Inc.'s Motion for Summary Judgment (Doc. 126),[1] and (3) Defendant Centurion's Motion for Entry of Final Judgment (Doc. 131).

**I.      Background**

In his Complaint, Plaintiff relevantly alleged as follows.  In 2015, Plaintiff was evaluated at the Oasis Sleep Study Center (Oasis) and diagnosed with severe sleep apnea and "placed on a BI-PAP mask"; it was found that an alternative treatment, a C-PAP mask would not provide effective treatment.  (Doc. 1 at 5, 12.)

In August 2018, Plaintiff was taken into the custody of the Arizona Department of Corrections (ADC) and requested a C-PAP machine after being told by Corizon employees

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response.  (Doc. 128.)

that BI-PAP masks were unavailable to prisoners.  (*Id.* at 5-6; Doc. 2 at 4.)  In September 2018, the provider who saw Plaintiff in August recommended that Plaintiff be given a BI-PAP mask for his severe sleep apnea.  (Doc. 1 at 6.)  At that point, Plaintiff was suffering from severe sleep deprivation, high blood pressure, memory loss, paranoia, suicidal thoughts, hallucinations, depression, and the "daily fear of sudden death thoughts."  (*Id.* at 6-7.)  Twice in November, Plaintiff requested the status of the BI-PAP mask, but did not receive a response until February 2019 when the provider told him that she was issuing a second request to the Corizon Utilization Medical Board for approval of a BI-PAP mask. (*Id.* at 7-8.)  Between February and May 2019, Plaintiff went to medical numerous times due to anxiety attacks he was suffering from lack of sleep.  (*Id.* at 8.)  After Plaintiff tried to follow-up several times on the status of the BI-PAP mask, he was told in June 2019 that a third request for a BI-PAP mask was being submitted to the Corizon Utilization Review Board.  (*Id.* at 10.)

On June 20, 2019, Plaintiff was issued a C-PAP mask, but after trying to use it, found that he felt like he was suffocating.  (*Id.* at 10-11.)  After advising Corizon staff that he had been given the wrong mask, Corizon staff told him he would not be given the BI-PAP mask due to cost.  (*Id.* at 12.)  On June 24, 2019, Centurion began providing medical care for the ADC, but Plaintiff complained to the "same medical staff," who knew of his sleep apnea issues because Centurion employed the same staff as Corizon.  (*Id.* at 13.)

After Centurion took over, Plaintiff continued to request approval for the BI-PAP mask, but Centurion's staff did not file a new request for a BI-PAP mask and Plaintiff was told to file a grievance even though his condition continued to deteriorate.  (*Id.* at 15-16.)

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment medical claims against Defendants Corizon and Centurion.  (Doc. 8.) The Court subsequently granted summary judgment in favor of Defendant Centurion. (Doc. 125.)

**II.    Motions for Summary Judgment**

Plaintiff and Corizon cross move for summary judgment.

**A.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**B.     Facts**

On August 24, 2018, Plaintiff submitted a Health Needs Request (HNR) stating that he needed a C-PAP machine to breathe when he sleeps. (Doc. 127-1 at 2.) Plaintiff was

referred to a provider. (*Id.*) On August 26, 2018, Plaintiff saw Registered Nurse (RN) Jeffrey, who referred him to a provider for evaluation and a plan of action. (*Id.* at 3-6.) On August 30, 2018, Plaintiff was seen by Nurse Practitioner (NP) Weigel, who noted that Plaintiff reported he had sleep apnea prior to incarceration. (Doc. 127-2 at 2.) In the plan notes, it was noted that Plaintiff "requests sleep study f[ro]m outside PCP." (*Id.* at 3.)

On September 13, 2018, NP Weigel saw Plaintiff during a medical provider physical intake and noted that Plaintiff had documentation showing that studies were done and he was diagnosed with severe sleep apnea in 2015. (Doc. 127-3 at 2.) In the plan notes, Weigel wrote "please, order a BI-PAP machine for patient, non stock SNO is fil[l]ed out." (*Id.* at 3.)

On September 18, 2018, Plaintiff was seen for a chronic care appointment by NP Okafor and reported "nighttime awakening due to sleep apnea." (*Id.* at 5.) On October 2, 2018, Plaintiff submitted a HNR asking when he was going to receive the ordered BI-PAP machine. (Doc. 127-4 at 2.) On October 4, 2018, RN Hunt responded, "The order is awaiting approval from the director. Once it is approved, it will be ordered." (*Id.*)

On November 4, 2018, Plaintiff submitted a HNR asking for the status of the BI-PAP machine order. (Doc. 127- 5 at 2.) On November 5, 2018, a staff member responded, "sending to supply coordinator to check status on BI-PAP machine request by NP when you were at Meadows." (*Id.*) On November 27, 2018, Plaintiff submitted a HNR asking for the status of the BI-PAP order. (Doc. 127-6 at 2.) On November 28, 2018, RN Brimhall responded "To CNA [(certified nurse assistant)]." (*Id.*)

On February 7, 2019, Plaintiff submitted a HNR stating that he has sleep apnea and needs a BI-PAP machine and although the nurse practitioner at Meadows said she was ordering one in September 2018, he still had not received one. (Doc. 127-7 at 2.) Plaintiff requested to see a provider to "take care" of his medical needs. (*Id.*) On February 14, 2019, Licensed Practical Nurse (LPN) Bainbridge responded: "No such C-PAP machine has been approved." (*Id.*)

On March 18, 2019, Plaintiff saw NP Thomas and Thomas noted "BI-PAP ordered

for sleep apnea." (Doc. 127-8 at 2-6.) On March 25, 2019, Plaintiff submitted a HNR stating that he has severe sleep apnea and asking for the status of the BI-PAP order. (Doc. 127- 9 at 2.) RN Jones responded, "referred to the provider's office." (*Id.*)

On May 7, 2019, Plaintiff submitted a HNR stating that since has been waiting for a BI-PAP machine, he has been up every night choking, coughing, throwing up, and struggling/fighting for air, and that it has gotten worse over the past six months and that he is suffering. (Doc. 127-10 at 2.) On May 10, 2019, RN Brown responded "CNA to check into status." (*Id.*) On May 22, 2019, Plaintiff submitted a HNR stating that he needed to see a provider as soon as possible for his severe sleep apnea. (Doc. 127-11 at 2.) On June 4, 2019, RN Brown responded that Plaintiff was scheduled for the nurse's line. (*Id.*)

On June 5, 2019, Facility Health Administrator Demery responded to a grievance Plaintiff submitted at Eyman Medical on May 31, 2019 as follows:

> Investigation into the issue that you have raised included a review of your medical record which evidences on August 30, 2018 you were evaluated by the Medical Provider for your request for a lower bunk and requesting a C-PAP machine for your reported sleep apnea. You stated that you previously had a C-PAP machine. The Provider requested that previous sleep study be obtained. You were evaluated by the Provider on September 13, 2018 to discuss the results of the sleep study records which were obtained from the Oasis Sleep Center. As a result of the sleep study, the use of a BI-PAP with settings of 19/15 was recommended. The Provider requested that a BI-PAP machine be ordered. However, there is no documentation to support that you received a BI-PAP machine. The Nursing Assistant will complete a non-stock form for the requested BI-PAP, and it will be forwarded to the Regional Utilization Review for approval. If approved, it will be ordered. If not approved, you will be notified.

(Doc. 127-12 at 2.) On June 12, 2019, Plaintiff was scheduled for a nurse visit on his request to see a provider as soon as possible for his sleep apnea. (Doc. 127-13 at 2.) Plaintiff reported that he wanted an update on how long the shipment for his BI-PAP machine would take, and was told to allow 6-8 weeks for delivery. (*Id.*) After Plaintiff received that information, he refused the appointment. (*Id.*)

On June 17, 2019, Plaintiff submitted a HNR stating that he was informed by a nurse that his BI-PAP machine was approved and had been ordered. (Doc. 127-14 at 2.) Plaintiff requested a status update as to when he would be receiving the BI-PAP machine. (*Id.*) On June 19, 2019, RN Brown responded: "allow for 2-3 months for delivery." (*Id.*)

On June 20, 2019, it was noted that Plaintiff was at the medical unit to pick up supplies requested by NP Thomas. (Doc. 127-15 at 2.) Plaintiff was issued a C-PAP machine with accessories. (*Id.*) On June 24, 2019, Centurion began providing medical care for the ADC.

### C.     Discussion

Defendant argues that it is entitled to summary judgment because there is no evidence it was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff argues that he is entitled to summary judgment because he has shown Defendant was deliberately indifferent to his serious medical needs.

#### 1.     Legal Standard

Under the Eighth Amendment, a prisoner must demonstrate that a defendant acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety"; to satisfy the knowledge component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corrs.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Finally, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

To prevail on a claim against Corizon, as a private entity serving a traditional public function, Plaintiff must meet the test articulated in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-94 (1978). *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law). To make this showing, Plaintiff must demonstrate that (1) he was deprived of a constitutional right; (2) Corizon had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Further, if the policy or custom in question is an unwritten one, the plaintiff must show that it is so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (internal quotation and citation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

**2.   Discussion**

Defendant argues that the record shows that Defendant "appropriately responded to Plaintiff's HNRs regarding the requested BI-PAP machine" and that the "mere delay" in medical care is insufficient to state a claim for deliberate indifference. Defendant also argues that Plaintiff's lifestyle choices are "main causes and risk factors of sleep apnea." Defendant asserts that Plaintiff has not shown that he suffered any harm as a result of Defendant's actions and that punitive damages are not warranted.

Defendant does not dispute that Plaintiff has a serious medical need. In August 2018, Plaintiff provided his medical providers with his medical records showing that he had been diagnosed with severe sleep apnea.

Although Defendant argues there is no evidence of deliberate indifference to Plaintiff's severe sleep apnea, Defendant offers no explanation for the nearly year-long delay in providing Plaintiff with a BI-PAP machine that was repeatedly recommended by

its own providers. Plaintiff avers, and the medical records support that Plaintiff suffered from sleep deprivation, nighttime choking, coughing, throwing up, and struggling/fighting for air, and that Plaintiff told medical providers that he was having these symptoms. As such, Defendant's argument that there is no evidence that Plaintiff suffered harm from the delay is meritless. *See Estelle*, 429 U.S. at 103 (Eighth Amendment applies even to "less serious cases, [where] denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose"); *Jett*, 439 F.3d at 1097-98 (finding sufficient evidence of harm caused by 6-month delay in surgery for fractured thumb where the prisoner's thumb healed improperly); *McGuckin*, 974 F.2d at 1060 (pain and anguish suffered by prisoner constituted harm sufficient to support a § 1983 action).

A jury could conclude that Defendant's failure to provide Plaintiff any care for his severe sleep apnea, including the care repeatedly recommended by its own providers for ten months, was the result of deliberate indifference to serious medical needs. The Ninth Circuit and other courts have routinely found that failure to follow a treating specialist's or a treating physician's recommendation may amount to a course of treatment that is medically unacceptable. *See Colwell v. Bannister*, 763 F.3d 1060, 1069 (9th Cir. 2014) (denying summary judgment where prison officials "ignored the recommendations of treating specialists and instead relied on the opinions of non-specialist and non-treating medical officials who made decisions based on an administrative policy"); *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (where the treating physician and specialist recommended surgery, a reasonable jury could conclude that it was medically unacceptable for the non-treating, non-specialist physicians to deny recommendations for surgery), *overruled in part on other grounds by Peralta*, 744 F.3d at 1083; *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (the defendant physician's refusal to follow the advice of treating specialists could constitute deliberate indifference to serious medical needs).

Moreover, a jury could conclude that because Plaintiff was not provided the care after several recommendations of its own providers, Corizon was ultimately responsible for the failure to provide Plaintiff care for his sleep apnea. *See Oyenik v. Corizon Health*

1  *Inc.*, No. 15-16850, 2017 WL 2628901, at *2 (9th Cir. June 19, 2017) (stating " [t]here is no case law indicating that a custom cannot be inferred from a pattern of behavior toward a single individual" and finding that a reasonable jury could conclude that at least a dozen instances of defendant Corizon denying or delaying consultations and radiation treatment for cancer patient over a year amounts to a custom or practice of deliberate indifference) (citing *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992)); *Mi Pueblo San Jose, Inc. v. City of Oakland*, C-06-4094 VRW, 2006 WL 2850016, at *4 (N.D. Cal. Oct. 4, 2006) (Whether actions by entity officers or employees amount to a custom "depends on such factors as how longstanding the practice is, the number and percentage of officials engaged in the practice, and the gravity of the conduct."). Accordingly, there are disputed issues of material fact whether Defendant had a policy, practice, or custom that resulted in a violation of Plaintiff's Eighth Amendment rights.

It is not clear how Defendant's argument that Plaintiff's lifestyle choices are "main causes and risk factors of sleep apnea" is relevant. There is no dispute that Plaintiff had sleep apnea and that his medical providers recommended that he have a BI-PAP machine to treat it. Defendant has presented no evidence that Plaintiff's "lifestyle choices" would have made the need for a BI-PAP machine unnecessary or that Defendant was somehow relieved of its obligation to treat Plaintiff due to Plaintiff's "lifestyle choices."

Defendant finally argues that Plaintiff is not entitled to punitive damages because he cannot show that Defendant's conduct was driven by evil motive or intent or that its conduct was reckless or callously indifferent to Plaintiff's constitutional rights. But the Court has determined genuine issues of material fact exist as to the exact nature of Defendant's conduct. On this record, a jury could conclude that Defendant acted with callous or reckless indifference to Plaintiff's constitutional rights, and, as a result, may assess punitive damages. Accordingly, Defendant's Motion for Summary Judgment will be denied as to punitive damages.

For the foregoing reasons, Defendant's Motion for Summary Judgment will be denied. Moreover, as discussed above, because there are disputed issues of material fact

that cannot be resolved at this stage, Plaintiff's Motion for Summary Judgment will also be denied.

### III. Centurion's Motion for Entry of Judgment

Defendant Centurion argues that the Court should enter final judgment on Plaintiff's claim against it because "there is no just reason to delay." (Doc. 131.)

#### A. Legal Standard

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court determines there is no just reason for delay." Fed. R. Civ. P. 54(b). Rule 54(b) "was adopted 'specifically to avoid the possible injustice of delay[ing] judgment o[n] a distinctly separate claim [pending] adjudication of the entire case . . . . The Rule thus aimed to augment, not diminish, appeal opportunity.'" *Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 628 (9th Cir. 2015) (quoting *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015)).

#### B. Discussion

Centurion's assertion that there is no just reason for delay is not supported by an analysis of the facts in this action. The factual issues underlying the claim against Defendant Centurion significantly overlap with the factual issues underlying the claim against Corizon, the remaining Defendant, rendering piecemeal appeals highly probable. *See Jewel*, 810 F.3d at 628 (district court should not certify judgment pursuant to Rule 54(b) if there is likelihood of piecemeal appeals). For the same reason, the Court cannot find there is no just reason for delay as the "interlocking factual relationship of the various counts leading to the likelihood that a subsequent appeal would again seek review of the issues presented here . . . suggests that it [would not be] in the interests of sound judicial administration for the district court to certify this judgment as final." *Id.* at 630 (citation omitted). In short, the claims in this action are premised on intermingled facts raising concerns about piecemeal appeals, and, as a result, Defendant Centurion has not shown

that there is no just reason for delay. Accordingly, the Court will deny Defendant Centurion's Motion for Judgment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to: (1) Plaintiff's Motion for Summary Judgment (Doc. 108), (2) Defendant Corizon Health Inc.'s Motion for Summary Judgment (Doc. 126), and (3) Defendant Centurion's Motion for Entry of Final Judgment (Doc. 131).

(2) Plaintiff's Motion for Summary Judgment (Doc. 108) is **denied**

(3) Defendant Corizon Health Inc.'s Motion for Summary Judgment (Doc. 126) is **denied**.

(4) Defendant Centurion's Motion for Entry of Final Judgment (Doc. 131) is **denied**.

(5) This action is referred to Magistrate Judge John Z. Boyle to conduct a settlement conference.

(6) Defense Counsel shall arrange for the relevant Parties to jointly call Magistrate Judge Boyle's chambers at (602) 322-7670 within 14 days to schedule a date for the settlement conference.

Dated this 18th day of September, 2020.

Michael T. Liburdi
United States District Judge